Kyle McLean (SBN 6344126)
Oren Faircloth (*Pro Hac Vice forthcoming*)
Scott Haskins (*Pro Hac Vice forthcoming*)
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : kmclean@sirillp.com
Email: ofaircloth@sirillp.com
Email: shaskins@sirillp.com
*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRING BREWSTER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSAL SERVICES OF AMERICA LP d/b/a ALLIED UNIVERSAL and the ALLIED UNIVERSAL EMPLOYEE BENEFITS COMMITTEE,<br><br>Defendants. | Civil Action No.: 5:25-cv-381<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Spring Brewster, individually and on behalf of the Class defined below of similarly situated persons, allege the following against Universal Services of America, LP d/b/a/ Allied Universal Cash. ("Allied Universal") and the Allied Universal Employee Benefits Committee (the "Committee") (collectively, "Defendants") based upon personal knowledge

with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## **NATURE OF THE ACTION**

1.     It is both unfair and unlawful for entities like Defendants to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendants' unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the Allied Universal Health And Welfare Benefit Plan (the "Plan"), Defendants operate a non-compliant, discriminatory tobacco wellness program that does not offer the "full reward" to participants who satisfy the alternative standard and does not provide proper notice in all plan materials, violating federal regulations and depriving participants of benefits required under ERISA.

**CLASS ACTION COMPLAINT**

2.      Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that plans must satisfy to qualify for the statutory exception or safe-harbor, which they may invoke only if they can affirmatively demonstrate full compliance with these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, as long as that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based

**CLASS ACTION COMPLAINT**

on a health factor." The regulations make clear that for plans to be reasonable they must offer a "reasonable alternative standard" that provides the "full reward" to all participants who do not satisfy the initial standard. In other words, a wellness program must actually be designed to improve health or prevent disease and not be just an excuse to charge certain participants more money or make it difficult for them to get coverage. Providing participants with the "full reward" means making sure that every participant who completes the alternative standard gets the same reward as provided to non-smokers (i.e., avoiding the surcharge for the entire year).

4.    The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health

**CLASS ACTION COMPLAINT**

programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

5.    Outcome-based programs,[2] such as smoking cessation programs, must offer a "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3]

---

Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

**CLASS ACTION COMPLAINT**

The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges. The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . . ." *Id.*, 33160 (emphasis added). Defendants' failure to provide full reimbursement is a *direct violation* of these rules.

6.     Defendants cannot qualify for the statutory safe harbor because the Plan fails to satisfy the essential regulatory criteria, which "must be satisfied," (id., 33160) for a wellness program to be lawful under ERISA. The core deficiency of Defendants' wellness program is that it does not provide the "full reward" to all participants who satisfy the alternative standard, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv). Instead, Defendants unlawfully retain the surcharges paid by participants while they complete the alternative standard, in direct violation of ERISA's anti-discrimination provisions. The Plan makes clear that if participants complete the alternative standard later than the time prescribed by Defendants, the surcharge will stop on a *prospective* basis only "but [participants] will *not* be refunded any surcharge previously paid." By

**CLASS ACTION COMPLAINT**

offering the alternative standard and failing to provide a mechanism for retroactive reimbursement to those who satisfy that standard, Defendants deny participants the opportunity to achieve the "full reward," as required by law. This is not a minor technical failure—it is a fundamental violation of one of the regulation's core purpose: ensuring that every participant who satisfies the alternative standard receives the same financial benefit as those who meet the initial standard. Moreover, Defendants fail to provide sufficient notice of the availability of a reasonable alternative standard by which all participants are provided with the "full reward," as required under 29 C.F.R. § 2590.702(f)(4)(v). By failing to clearly communicate the availability of a reasonable alternative standard in "all plan materials" discussing the surcharge, Defendants make it even more difficult for participants to receive the full reward to which they are entitled under ERISA.

7.      This Complaint alleges that Defendants operate a discriminatory wellness program through a tobacco surcharge that is unlawful. Defendants have the burden of showing that their wellness program meets every regulatory requirement under ERISA and the implementing regulations, including that they provide a mechanism for ensuring that every participant who satisfied the alternative standard is fully reimbursed and that they provide notice of the availability of that surcharge in all plan materials discussing the

**CLASS ACTION COMPLAINT**

surcharge. Defendants cannot do so. Defendants' failure to reimburse surcharges to those who complete the alternative standard during the Plan year and failure to provide sufficient notice makes their program facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental defect. Allied Universal's wellness program is not a compliant "program[] of health promotion or disease prevention[,]" but an impermissible cost-shifting scheme that imposes unlawful penalties on individuals based on a health factor, in violation of ERISA.

8.    Plaintiff Spring Brewster is an employee of Allied Universal who paid, and continues to pay, the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed, and continues to impose, an additional financial burden on her and those similarly situated.

9.    Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for plan-wide equitable relief to prevent Allied Universal from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and

(a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## **PARTIES**

10.    Plaintiff Spring Brewster is, and at all times mentioned herein was, an individual citizen of the State of North Carolina residing in the County of Surry. Ms. Brewster is, and at all relevant times, was an employee of Allied Universal who paid the tobacco surcharge associated with the health insurance offered through her employer during her employment.

11.    Plaintiff Brewster is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

12.    Defendant Allied Universal Allied is a leading global security and facility services company headquartered in Conshohocken, Pennsylvania and Santa Ana, California. As of January 2025, Allied Universal employed over 800,000 people globally and operated in more than 100 countries, including over 300,000 employees in North America. Allied Universal realized global revenue of approximately $20 billion last year.

13.    Upon information and belief, the Committee is an unincorporated association based in Santa Ana, California. The Committee is a named fiduciary under the Plan

**CLASS ACTION COMPLAINT**

14.    At all times relevant to this lawsuit, Defendants operated one or more health and welfare plans which were available for Allied Universal employees. Recently filed public documents show the Plan has over 171,000 active participants as of January 1, 2024. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

## JURISDICTION AND VENUE

15.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

16.    This Court has personal jurisdiction over Defendants because Plaintiff's claims and those of all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff within the State of California, and Defendants have

**CLASS ACTION COMPLAINT**

purposefully availed themselves of the privilege of conducting business within the State of California.

17.    Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendants are headquartered in this District, and this is a District in which Defendants may be found.

## FACTUAL BACKGROUND

### I.    DEFENDANTS' TOBACCO SURCHARGE VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

18.    To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

19.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health*

***promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

20.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

21.    Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public

**CLASS ACTION COMPLAINT**

Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (a/k/a/ the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

22.    The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria. If the program fails to meet even one of these stringent requirements the program cannot benefit from the statutory carve-

**CLASS ACTION COMPLAINT**

out and remains in violation of the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section **only if _all_ of the [] requirements are satisfied**.").[4] Under *Auer v. Robbins,* 519 U.S. 452 (1997) and *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), courts **must** defer to agency interpretations of their own regulations unless "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461.

### B. Regulatory Criteria

23.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

---

[4] Congress adopted these regulatory criteria when, through the Patient Protection and Affordable Care Act, it amended the Public Health Service Act, incorporating these criteria into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]").

**CLASS ACTION COMPLAINT**

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*."29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal

physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

24.    The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

25.    Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

26.    A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in

**CLASS ACTION COMPLAINT**

determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

27. Some mistakenly conflate criteria (1) and (4), but they impose two distinct requirements: (1) the frequency of opportunity and (2) the full reward requirement. As discussed, the first ensures participants have at least one chance per plan year to satisfy a reasonable alternative standard. The second mandates that all who meet the alternative standard receive the same full reward as those who satisfied the initial standard at the outset. *See id.*, 33163. Merely offering an opportunity to avoid the surcharge does not satisfy the "full reward" requirement. If a plan offers the alternative standard

**CLASS ACTION COMPLAINT**

throughout the plan year, it must have a mechanism ensuring all participants who complete it receive the same benefit, regardless of when they complete the program. A useful analogy is a university course requirement. If a university offers a required course during the semester, students who complete it receive full credit. If a summer session is offered, students who complete it must also receive full credit. Accordingly, a plan that allows participants to complete the alternative standard throughout the plan year but withholds full reimbursement violates the full reward and the notice requirements, rendering the program noncompliant with ERISA's anti-discrimination protections.

28.    The "full reward" requirement makes clear that if a plan offers a reasonable alternative standard throughout the plan year, it must ensure that *every participant* who satisfies the alternative standard *receives the same full reward* as those who met the initial standard at the outset. A plan cannot permit participants to complete the alternative standard later in the plan year and then deny them the reward that was provided to participants who satisfied the same standard earlier in the year. Plans that impose arbitrary cutoff dates and withhold retroactive reimbursement violate ERISA's anti-discrimination protections by penalizing participants for the timing of their compliance rather than ensuring equal access to the full reward.

29.    Defendants' failure to provide full reimbursement for tobacco surcharges directly contradicts ERISA's anti-discrimination mandate and the regulatory requirement that "*[t]he full reward under the wellness program shall be made available to all similarly situated individuals.*" *See* 42 U.S.C. § 300gg-4; 29 C.F.R. § 2590.702(f)(4)(iv). Ensuring that wellness programs are designed to provide those participants who satisfy the alternative standard with the same reward as provided to those who initially satisfy the initial standard (i.e., non-smokers) is a requirement the DOL has consistently emphasized as fundamental to compliance with ERISA's anti-discrimination provisions.

30.    The DOL recently articulated how plans must have a mechanism to ensure full reimbursement for surcharges already paid because this "interpretation [of the regulatory requirement] is not only reasonable under the regulation, it is entirely consistent with ERISA." *Sec'y of Labor v. Macy's, Inc.*, No. 1:17-cv-541, ECF No. 87, PAGEID: 1224 (filed Jan. 24, 2025), 19 (S.D. Ohio) ("DOL Brief"). Permitting plans to penalize participants for taking longer to complete the alternative standard would, as the DOL recognized, "in fact allow for plans to discriminate for a portion of the plan year." *Id.* Defendants' Plan does exactly that. By denying retroactive reimbursement to anyone who satisfies the alternative standard

after Defendants' arbitrary cutoff date, Defendants unlawfully create two classes of participants: those who avoid the surcharge by completing the program earlier in the year, and those who are forced to pay surcharges for part of the year simply because they took longer to complete the same program during the same Plan year. This type of plan violates § 702's prohibition against discrimination based on a health status factor and "in fact allow for plans to discriminate for a portion of the plan year." *Id.* Allowing companies like Allied Universal to exploit their participants and unlawfully extract millions from them under the guise of a wellness program is nothing more than a cash grab, directly contradicting ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

## II.  DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

31.    Defendants' wellness program violates ERISA and its implementing regulations by failing to provide a "program[] of health promotion or disease prevention" that complies with the regulatory framework. Specifically, Defendants' program unlawfully discriminates against participants for part of the year by denying full reimbursement to

**CLASS ACTION COMPLAINT**

anyone who completes the wellness program after the arbitrary June 30 cutoff date. Instead of ensuring that "all similarly situated individuals" are able to obtain the "full reward" as required by 29 C.F.R. § 2590.702(f)(4), Defendants' Plan penalizes participants who complete the program in the second half of the plan year by withholding reimbursement to those participants. In doing so, Defendants turn a supposed wellness program into an unlawful cost-shifting scheme that exploits employees and violates ERISA's anti-discrimination protections.

32.    This structure imposes financial discrimination on participants based solely on the timing of their compliance, creating two classes of individuals: (1) those who avoid the surcharge entirely because they complete the program by the cutoff date, and (2) those who must pay surcharges for most of the year despite ultimately meeting the same requirement. This violates ERISA's prohibition on health-based discrimination by unfairly penalizing some participants for taking longer to complete the program.

33.    Moreover, the Plan fails to provide participants with clear notice. Specifically, the Plan's failure to fully reimburse participants who complete the alternative standard later in the year means that the so-called "reasonable alternative" is, in reality, not actually available to all similarly situated individuals in the way that ERISA and the Final Regulations require. A notice

that describes an alternative standard that does not provide the "full reward" is, by definition, misleading and incomplete. The Plan effectively provides notice of a ***partial*** alternative standard, which is insufficient under 29 C.F.R. § 2590.702(f)(4)(v) because it does not enable participants to obtain the same financial benefit as those who initially meet the non-smoking standard.

34.    Moreover, the Final Regulations mandate that all plan materials describing the surcharge must include a clear disclosure of the availability of a reasonable alternative standard.[5] Upon information and belief, Defendants fail to provide this notice in all relevant plan materials. The Summary Plan Description ("SPD") may contain limited information, but other plan materials that discuss the tobacco surcharge, including enrollment guides, benefits summaries, and online portals, do not uniformly contain the required notice.

35.    Defendants' wellness program fails to comply with ERISA and its implementing regulations by denying participants the "full reward" required and by failing to provide adequate notice in all plan materials under 29 C.F.R. § 2590.702(f).

---

[5] *See* § 2590.702(f)(4)(v) ("The plan or issuer ***must disclose in all plan materials*** describing the terms of an outcome-based wellness program, and ***in any disclosure that an individual did not satisfy an initial outcome-based standard***, the availability of a reasonable alternative standard to qualify for the reward . . . including contact information for obtaining a reasonable alternative standard and ***a statement that recommendations of an individual's personal physician will be accommodated***") (emphases added).

36.    Specifically, the program imposes a punitive $50 per month tobacco surcharge for an annual amount of roughly $600. While tobacco users have the option of participating in a wellness program, the Quit for Life program, that program does not provide retroactive reimbursement for all participants.

37.    Participants who fail to enroll in and complete the program within six months of their initial enrollment or by June 30, cannot earn the "full reward." Those participants are eligible to have the surcharge removed only *prospectively*, despite clear regulatory guidance that the "full reward" must be provided to "all similarly situated individuals."

38.    Defendants' wellness program allows participants who complete a quit-tobacco program to avoid the surcharge, but only on a go-forward basis. As an annual FAQ sheet clearly states:

> If you register for and complete the Quit for Life program within 6 months of your initial medical plan enrollment effective date or by June 30 following any subsequent annual open enrollment effective date, your surcharge will be removed and the surcharge amount paid by you will be refunded. If you complete the Quit for Life program later than the time period described [], your surcharge will stop but ***you will not be refunded any surcharge previously paid***.

39.    This means participants who become tobacco-free in the second half of the year or who complete the smoking cessation program in that time

**CLASS ACTION COMPLAINT**

can avoid future surcharges but are not retroactively reimbursed for any surcharges already paid in that plan year. This practice violates ERISA's requirements that participants receive the "full reward" after satisfying the alternative standard. Consider two hypothetical Allied Universal employees, Mike and Lucy, both of whom are charged the $50 monthly tobacco surcharge starting in January. Both enroll in Defendants' Quit for Life program to satisfy the alternative standard and avoid further surcharges. Lucy completes the program by April and is then reimbursed for the months she was in the program. Mike, however, is caring for his sick mother, and only completes the program in August. Despite satisfying the same requirement, Defendants refuse to reimburse Mike for the surcharges paid from January to August. Because Mike took longer to complete the exact same program, he was penalized, a clear violation of ERISA.

40.    The DOL explicitly prohibits this type of financial penalty on individuals who take longer to complete a reasonable alternative standard. Participants should not have to rush through wellness programs to avoid higher costs because that does not actually promote health.

41.    An alternative scenario demonstrating the deficiency of the program would be if Mike went to his doctor and, together, they developed a physician-prescribed 8-month gradual cessation plan that includes

**CLASS ACTION COMPLAINT**

counseling, nicotine replacement therapy, and medical supervision to maximize Mike's chance of quitting successfully. Mike diligently follows this plan, attending regular appointments and making documented progress. He quits smoking at the end of 8 months but, despite fully complying with his physician-approved alternative standard—instead of the Plan's Quit for Life program that permits participants to continue smoking—Mike cannot qualify for the "full reward" under Defendants' program because his treatment extended beyond Defendants' arbitrary June 30 cutoff date. While Mike put in more time and effort and successfully stopped smoking by the end of his program, he still penalized.

42.    By permitting participants to complete the alternative standard past the June 30 deadline without ensuring they receive the full reward, Defendants' Plan functions as an unlawful partial-year penalty system, imposing higher costs on certain participants for no reason other than the timing of their compliance. This practice is not just unfair—it is unlawful under ERISA, which does not allow plans to discriminate against participants for part of the year simply because they took longer to complete the alternative standard. Plans cannot set arbitrarily deadlines, while providing the opportunity for participants to expend time and energy satisfying an alternative, and then selectively deny the full reward to certain participants.

**CLASS ACTION COMPLAINT**

By extension, the notice requirement is illusory, making the program discriminatory in nature and transforming it into a revenue-generating guise of health promotion. Because Defendants' wellness program fails to comply with these core regulatory requirements, it is unlawful and must be invalidated.

43.    In 2022, and, upon information and belief, for years prior and after, Defendants charged an annual tobacco surcharge of $600. Each plan year, Defendants administered a policy on all participants who self-identify as someone who uses tobacco products with a periodic and regular surcharge ($50) that was deducted from their paychecks. Plaintiff paid this surcharge during this period and continues to pay it.

44.    Defendants' wellness program fundamentally fails to comply with ERISA's regulatory requirements because it does not provide the full reward after an arbitrary deadline and fails to provide notice of the same or in all the Plan materials discussing the tobacco surcharge. Under ERISA, a wellness program cannot claim safe harbor protection unless every criterion of the regulatory framework is satisfied. *See* 29 C.F.R. § 2590.702(f)(4).

## III. DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

45.    Defendants control the administration of the tobacco surcharge wellness program, determining which participants are charged and

**CLASS ACTION COMPLAINT**

withholding the surcharge amounts directly from participants' paychecks, evaluating and deciding whether participants satisfy the alternative standard, and when those participants will be reimbursed on a go-forward basis, and determining which information is transmitted to participants and when. The amounts Defendants deduct from tobacco-using participants are not placed in a trust account for the Plan but are instead deposited into Allied Universal's general accounts. By retaining these surcharges rather than reimbursing participants who satisfy the alternative standard or contributing the funds to the Plan, Allied Universal unlawfully profits from its own regulatory violations. Instead of complying with their legal obligations to provide a compliant wellness program, Defendants withhold surcharges that should be returned to participants and, in doing so, earn interest on improperly retained funds while simultaneously reducing their own financial contributions to the Plan. This practice constitutes self-dealing and a breach of fiduciary duty under ERISA, which mandates that Plan assets be managed exclusively for the benefit of participants and beneficiaries—not to enhance the company's bottom line.

46.    Defendants have a fiduciary obligation to ensure that Plan funds—including any surcharges collected—are used solely to support participant health coverage and wellness benefits. Instead, Defendants'

failure to reimburse surcharges to participants who satisfy the alternative standard reveals the true purpose of the program: revenue generation rather than health promotion. By charging surcharges without a mechanism for full reimbursement, Defendants transform their so-called wellness program into a profit-driven penalty scheme that systematically shifts costs onto participants in violation of ERISA's fiduciary duty standards. In sum, Defendants' program is not a legitimate wellness initiative, but an unlawful financial scheme designed to extract additional funds from employees while failing to meet ERISA's legal requirements.

## CLASS DEFINITION AND ALLEGATIONS

47.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

48.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

**CLASS ACTION COMPLAINT**

49.    Excluded from the Class are Allied Universal's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

50.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

51.    The proposed Class meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

52.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

53.    **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

**CLASS ACTION COMPLAINT**

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendants notified participants in all the plan materials describing the surcharge of the avenues by which participants could avoid the tobacco surcharge and obtain the "full reward";

d. Whether Defendants' wellness program violates ERISA and the applicable regulations;

e. Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its wellness program to ensure compliance with ERISA and applicable regulations;

g. Whether Allied Universal breached its fiduciary duty by failing to properly monitor and overlook the activities of the Committee to ensure compliance with ERISA and the applicable regulations;

h. The appropriate mechanisms to determine damages on a class-wide basis

54. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

55. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and

**CLASS ACTION COMPLAINT**

members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

56.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single

proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

57.    Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION
## COUNT I
## UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE

### (Violation of 29 U.S.C. § 1182)

58.    Plaintiff re-alleges and incorporates herein by reference the prior allegations in paragraphs 1–57 of this Complaint.

59.    Defendants unlawfully impose a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By charging up to $600 per participant annually (and additional surcharges for dependents), Defendants unlawfully discriminate against certain participants based on a health status-related factor, in direct violation of ERISA § 702(b), 29 U.S.C. § 1182(b). This discrimination stems from Defendants' decision to provide

access to the alternative standard and then refusing to provide the full reward to participants who satisfy the alternative standard after an arbitrary deadline, in violation of ERISA and the Final Regulations.

60.    ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendants' Plan violates this prohibition by withholding the full reward from participants who complete the alternative standard after the June 30 arbitrary deadline, forcing them to pay surcharges even while actively satisfying the wellness programs requirements. If Defendants refused to allow participants to complete the alternative standard after a certain date, they might attempt to justify their refusal to reimburse past surcharges; however, once Defendants permit participants to complete the standard at any time during the year, they are legally required to provide those participants with "the same, full reward"—including reimbursement for past surcharges. By failing to do so, Defendants operate a discriminatory wellness program that violates ERISA and fails to qualify for the safe-harbor exception.

61.    Defendants' imposition of the tobacco surcharge violates ERISA § 702 and the Final Regulations, including but not limited to 45 C.F.R. § 146.121(f)(4) and 29 C.F.R. § 2590.702(f)(4). Defendants' wellness program is non-compliant because it does not provide the "full reward" to "all similarly situated individuals" and because it does not provide proper notice to participants. Instead, participants who satisfy the alternative standard in the second half of the year can obtain only prospective relief, unlawfully denying them the full financial benefit to which they are owed. To comply with ERISA's "full reward" requirement, the Plan must have a mechanism to ensure that every participant who completes the alternative standard, regardless of when during the plan year, avoids the surcharge for the entire year, as if they were a non-smoker.

62.    Additionally, Defendants fail to provide adequate notice of participants' rights under the wellness program, compounding the Plan's noncompliance. Because the Plan fails to offer a compliant reasonable alternative standard, it also fails to notify participants of the same, violating the notice requirements outlined in § 2590.702(f)(4)(v). Further, upon information and belief, Defendants fail to include the necessary disclosures in all plan materials discussing the tobacco surcharge. While discussion of the tobacco surcharge is buried in the Plan's SPD, upon information and belief,

**CLASS ACTION COMPLAINT**

there is no description in the Plan document[6] and Defendants fail to provide

notice in all plan materials discussing the surcharge, in direct violation of the

Final Regulations. *See* § 2590.702(f)(4)(v).

63.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a

participant or beneficiary to bring a civil action to: (A) enjoin any act or

practice which violates any provision of this title or the terms of the plan, or

(B) to obtain other appropriate equitable relief (i) to redress such violations

or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29

U.S.C. § 1182(b). Because Defendants' wellness program does not satisfy

several of the criteria that plans must comply with to qualify as a compliant

"program[] of health promotion and disease prevention," Defendants cannot

qualify for the statutory safe-harbor and the tobacco surcharge is, therefore,

unlawful and discriminatory. Plaintiff and Class Members are entitled to relief

under ERISA § 502(a)(3).

64.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff

seeks all available and appropriate remedies to redress Defendants' violations

of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-

---

[6] *See* Final Regulations, 33167 n. 24 ("For ERISA plans, wellness program terms
(including the availability of any reasonable alternative standard) are generally ***required
to be disclosed in the summary plan description (SPD), as well as in the applicable
governing plan documents*** (which must be provided upon request), if compliance with the
wellness program affects premiums, cost sharing, or other benefits under the terms of the
plan") (emphasis added).

4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendants' unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
### BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

65.    Plaintiff re-alleges and incorporates herein by reference the prior allegations in paragraphs 1–57 of this Complaint.

66.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

67.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants'

paychecks and using these funds to offset its own obligations to contribute to the Plan.

68.    Each year, the Committee administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its wellness programs, including the decision to administer a wellness program in a manner that violated the DOL Regulations and ERISA, as discussed herein. Each year, the Committee exercised discretionary authority with respect to the administration and implementation of the unlawful wellness program by administering a wellness program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year and dictated the eligibility criteria and penalties for noncompliance, including the refusal to provide any retroactive reimbursement.

69.    The Committee determined which participants satisfied the alternative standard and controlled when the surcharges would stop, if at all, for those participants. The Committee controlled and disseminated the contents of the SPD and other plan communications detailing the tobacco surcharge, which failed to notify participants of a reasonable alternative

**CLASS ACTION COMPLAINT**

standard by which they could avoid the entire year of surcharges regardless of when they satisfied the alternative standard; maintained a policy of refusing to reimburse surcharges for the first half of the year to participants that completed the program in the second half of the year; and did not adequately account for individualized circumstances, such as participants' health conditions or physicians' recommendations. The Committee also failed to regularly and adequately monitor and review the terms of the wellness program to ensure compliance with ERISA and the regulatory framework. These actions reflect the Committee's active role in administering a discriminatory wellness program in violation of ERISA and applicable regulations.

70.    The Committee also breached its fiduciary duties by assessing and collecting the unlawful tobacco surcharges in violation of ERISA and the applicable regulations and funneling those funds into Allied Universal's coffers. To that extent, Committee breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. The Committee acted disloyally by causing Plaintiff and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

**CLASS ACTION COMPLAINT**

71.   ERISA also imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the Committee to impose an unlawful tobacco surcharge in connection with a non-compliant wellness program in violation of ERISA, Allied Universal breached its fiduciary duties to supervise and monitor the Committee. Allied Universal also failed to monitor the frequency with which the Committee reviewed the terms of the wellness program to ensure compliance with ERISA.

72.   As a result of the imposition of the unlawful and discriminatory tobacco surcharges, Allied Universal enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendants breached their fiduciary duties by prioritizing their financial interests over the interests of Plan participants by deducting from participants' paychecks the amounts of the surcharges without properly administering retroactive refunds for the tobacco surcharge to individuals who completed the wellness program in the second half of the year. By administering the wellness program in a manner that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, the Committee administered a program that disproportionately benefited Allied Universal at the expense of Plan

participants. This practice resulted in an unjust enrichment to Allied Universal at the expense of Plan participants, demonstrating a failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

73.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Allied Universal caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1), by offsetting its contributions to the Plan. Allied Universal is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

74.    By retaining the amounts of the tobacco surcharges, Allied Universal increased its own monies and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants

**CLASS ACTION COMPLAINT**

with the "full reward" to which they are entitled, Allied Universal improperly benefitted from its own wellness programs at the expense of Plan participants.

75. Defendants also breached their fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were adverse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) to ensure they properly complied with the regulatory requirements regarding the reasonableness of the program, the "full reward" to "all similarly situated individuals," in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory surcharges. Had Defendants conformed with their fiduciary duties under ERISA, they would not have administered a non-compliant wellness program and/or would have reviewed the terms of the Plan and the wellness programs regularly to ensure they complied with ERISA and the implementing regulations.

**CLASS ACTION COMPLAINT**

76.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

77.    Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendants are liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through their violations, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-

**CLASS ACTION COMPLAINT**

discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharges;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting an unreasonably restrictive wellness program that violated ERISA's anti-discrimination provisions and for failing to adequately monitor the actions of the Plan's fiduciaries and the wellness program to ensure the terms thereof complied with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants charged for the surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory nicotine surcharges;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a

43

**CLASS ACTION COMPLAINT**

declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

**CLASS ACTION COMPLAINT**

Dated: February 11, 2025          Respectfully submitted,

**SIRI & GLIMSTAD LLP**

/s/ *Kyle D. McLean*
Kyle D. McLean (Bar No. 330580)
Oren Faircloth (*pro hac vice* forthcoming)
Scott Haskins (*pro hac vice* forthcoming)
700 S. Flower St., Ste. 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
E: kmclean@sirillp.com
E: ofaircloth@sirillp.com
E: shaskins@sirillp.com

*Attorneys for Plaintiff and the
Proposed Class*

**CLASS ACTION COMPLAINT**